IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Robert C. Johnson, | ) Case No. 8:22-cv-00214-DCC-JDA |
| Plaintiff, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
|  | ) **OF MAGISTRATE JUDGE** |
| MD Halford Meyer, MD David M. Ingraham, RN Cheryl Were, LPN Geneva Walters, LPN Yvonne Munro, Bobbie Lee, | ) |
| Defendants. | ) |

This matter is before the Court on motions to dismiss filed by Defendants.[1] [Docs. 15; 16.] Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action in the Richland County Court of Common Pleas on December 20, 2021. [Doc. 1-3.] Defendant Lee, with the consent of the other defendants who had been served at the time, removed the action to this Court on January 24, 2022, based on federal-question jurisdiction. [Doc. 1.] Plaintiff filed an Amended Complaint on February 14, 2022. [Doc. 12.] On February 21 and 28, 2022, Defendants filed motions to

---

[1] In an earlier issued Report and Recommendation, the undersigned noted that there was no indication that Defendant Werre had been served with the Summons and Complaint in this action. [Doc. 14 at 1 n.1.] However, Defendants represent that, as of February 25, 2022, Werre granted permission for the counsel representing Defendants Dr. Meyer, Dr. Ingraham, Walters, and Munroe to accept service on her behalf, and she joins in the motion to dismiss filed by those Defendants. [Doc. 16 at 1.] The Court spells Munroe's and Werre's names as they are spelled in that motion to dismiss. [*Id.*]

dismiss for failure to state a claim. [Docs. 15; 16.] Plaintiff filed responses opposing those motions on March 21 and 28, 2022. [Docs. 21; 22.] The motions are now ripe for review.

## **BACKGROUND**[2]

Plaintiff is currently incarcerated at Broad River Correctional Institution ("BRCI") and he was incarcerated there at all times relevant to this action. [Doc. 12 ¶ 1.] In his Amended Complaint, Plaintiff alleges that on or about July 24, 2018, he was experiencing chest pain and was evaluated by Defendant Dr. Meyer. [*Id.* ¶¶ 15–16.] It was determined that he presented multiple risk factors for cardiac distress. [*Id.* ¶ 17.] Dr. Meyer saw him again the following day for "chest pain of the left side and tightness," and Dr. Meyer thereafter consulted with Defendant Dr. Ingraham. [*Id.* ¶¶ 18–19.] It was determined that Plaintiff required further work up and evaluation and a cardiologist consultation was requested. [*Id.* ¶19; Doc. 12-1 ¶ 10.] Thereafter, Plaintiff continued to rely on Defendants for his treatment and care. [*Id.* ¶ 20.] He anticipated he would receive treatment shortly, but he was never sent for additional follow up. [*Id.* ¶ 21.]

On August 17, 2018, Plaintiff presented to Defendant Nurse Werre with a 2.76 serum creatinine level and recommendations from Columbia Nephrology to monitor those levels. [*Id.* ¶ 22.] On December 19, 2018, Lee received Plaintiff's lab results and forwarded them to Dr. Meyer. [*Id.* ¶ 23.] Plaintiff alleges that Plaintiff's "creatinine level should have indicated to [Lee and Dr. Meyer] that Plaintiff's condition was worsening" but that despite all Defendants' "realizing that [there was] a substantial risk of serious harm to Plaintiff, Defendants disregarded the several signs." [*Id.* ¶¶ 24–25.] On January 1, 2019,

---

[2]The facts included in this Background section are taken from Plaintiff's Amended Complaint, including an attachment incorporated by reference. [Docs. 12; 12-1.]

2

Plaintiff was rushed to the emergency department at Prisma Health, presenting with a myocardial infarction. [*Id.* ¶ 26.] Plaintiff alleges the deliberately indifferent acts and/or omissions committed by the Defendants constitute a violation of his rights and a deviation and failure to comply with the appropriate standard of care. [*Id*. ¶ 27.] Further, Plaintiff alleges that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution by knowingly and willfully denying him proper care. [*Id.* ¶¶ 29–35.] As his relief, Plaintiff requests money damages, including punitive damages, as well as attorneys' fees and court costs. [*Id.* at 7.]

To his Amended Complaint Plaintiff has attached and incorporated by reference an affidavit from Dr. Jay B. Krasner.[3] [Docs. 12 ¶ 12; 12-1.] The affidavit asserts that "the heathcare staff at [BRCI] initially failed to recognize the severity and urgency of Plaintiff's complaints." [Doc. 12-1 ¶ 9.] The affidavit explains:

> 10. On 24 July 2018, Plaintiff, with multiple risk factors for [coronary artery disease] as well as chronic kidney disease (stage IV), was evaluated at [BRCI] for chest pain. Cardiology consultation was requested. He was not evaluated by a cardiologist until 1 January 2019. Serum creatinine in August 2018 was 2.76.
>
> 11. On 1 January 2019, Plaintiff was admitted to Prisma Health Richland Hospital with an acute non-ST segment elevation myocardial infarction complicated by acute congestive heart failure and hypertensive urgency. Admission creatinine was 2.88. . . .
>
> . . . .

---

[3]The affidavit indicates it was provided pursuant to South Carolina Code §15-36-100, which requires that the affidavit specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on available evidence. [Doc. 12-1 ¶ 4.]

13. Failure to address symptoms consistent with angina in a patient with multiple risk factors for coronary artery disease in a timely fashion constitutes breach of the standard of care.

14. But for the failure to diagnose Plaintiff's coronary artery disease in a timely fashion, Plaintiff sustained [a] myocardial infarction on or about 1 January 2019.

[*Id.* ¶ 10–11, 13–14.]

## APPLICABLE LAW

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks omitted). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this

4

constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* (internal quotation marks omitted). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court

5

to "begin[ ] by identifying the specific conduct of which the plaintiff complains." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (internal quotation marks omitted).

Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[4]

---

[4]Stated differently,

> [A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983.

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (internal quotation marks omitted). A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects."). A *Bivens* action "is

*Id.* (citations omitted and footnote added).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

---

the 'federal analog to suits brought against state officials under . . . § 1983.'" *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)). Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in § 1983 actions as well as *Bivens* actions. *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to

articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## **DISCUSSION**

To survive a motion to dismiss, each claim asserted in a complaint must set forth sufficient facts to state a claim that is facially plausible. *Id.*; *Twombly*, 550 U.S. at 570. Under the Eighth Amendment, prisoners have the right to receive adequate medical care while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 236 (4th Cir. 2016). Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (internal quotation marks omitted). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate

9

indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011). As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted). With respect to claims of inadequate medical treatment under the Eighth Amendment, "the objective component is satisfied by a serious medical condition." *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his [or her] actions were inappropriate in light of that risk." *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (internal quotation marks omitted). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975); *Hirons v. Director*, 351 F.2d 613 (4th Cir. 1965) ("Prisoners are entitled to reasonable medical care."); *see also, e.g., Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011). The fact that a prisoner believed he had a more serious injury or that he required

better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

**Lee, Werre, Munroe, and Walters**

Lee argues the Plaintiff has failed to plead a cause of action against her to support a claim of deliberate indifference [Doc. 15-1 at 4–6], and the remaining Defendants also argue Plaintiff has failed to plead a cause of action against them [Doc. 16-1 at 6–9.] The Court begins with a discussion of Lee, Werre, Munroe, and Walters.

The totality of Plaintiff's allegations against these defendants includes that they were responsible for providing medical care to Plaintiff [Doc. 12 ¶ 4–7]; they were charged with a duty of providing a reasonably safe facility and adequate medical care and protecting Plaintiff from harm and remediating harm occurring to him while in custody [*id*. ¶ 13]; Walters, Munroe, and Werre worked in the BRCI medical unit and regularly monitored Plaintiff's condition while he was incarcerated there [*id.* ¶ 14]; on August 17, 2018, Plaintiff presented to Nurse Werre in medical with a serum creatinine level of 2.76 and recommendations from Columbia Nephrology to monitor Plaintiff's levels [*id*. ¶ 22]; Lee received lab work for Plaintiff on December 19, 2018 and forwarded it to Dr. Meyer [*id*. ¶ 23]; Lee should have known his condition was worsening [*id*. ¶ 24]; these four Defendants realized a substantial risk of harm to Plaintiff and disregarded several signs [*id*. ¶ 25].

The Court concludes that Plaintiff fails to state a claim as to Nurse Walters and Nurse Munroe because Plaintiff does not allege that these two Defendants had any knowledge of or involvement in his treatment for his chest pain or cardiac risk factors. In

the absence of such allegations, Plaintiff has not plausibly alleged that Walters or Munroe subjectively recognized that their or anyone else's actions were inappropriate as to Plaintiff. *See Parrish ex rel. Lee*, 372 F.3d at 303.

The Court also concludes that Plaintiff's allegations as to Lee fail to state a claim. Lee's only specific alleged involvement with Plaintiff's treatment for chest pain or cardiac risk was that she received his lab results on December 19, 2018, and forwarded them to Dr. Meyer. [Doc. 12 ¶ 23.] By so doing, she left Dr. Meyer to decide what, if any action, the lab results warranted. A prison medical professional who serves "as a gatekeeper for other medical personnel capable of treating the condition may be held liable under the deliberate indifference standard if she delays or refuses to fulfill that gatekeeper role." *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotation marks omitted).[5] Here, Plaintiff has not alleged any facts indicating that Lee failed to fulfill that role or that she had any other role. In the absence of such allegations, Plaintiff has not plausibly alleged that

---

[5]In *Mata*, a prisoner sought assistance for chest pains from a licensed practical nurse at the prison infirmary. *Mata*, 427 F.3d at 750. The nurse told her that there was "nothing she could do because the infirmary was closed" and told her to return the next morning. *Id.* The following day, a different licensed practical nurse performed an electrocardiogram ("EKG"), which revealed normal results. *Id.* When the prisoner's chest pains continued, she saw a registered nurse and a nurse practitioner. *Id.* The nurse practitioner contacted a doctor, who instructed the nurse to send the prisoner to the hospital immediately. *Id.* The hospital found that the prisoner had suffered a heart attack and irreversible heart damage. *Id.* Considering the nurses' entitlement to summary judgment, the court concluded that the prisoner's deliberate indifference claim survived as to the nurse who had told her that the infirmary was closed and refused to seek a medical evaluation from a nurse practitioner or doctor. *Id.* at 756. However, the court held that the other three defendants were entitled to summary judgment. *Id.* at 759–61. The court held that the registered nurse had fulfilled her "gatekeeper" duties by reporting the prisoner's symptoms to a nurse practitioner, who, in turn, fulfilled her similar duties by faxing the prisoner's EKG printout to a physician. *Id.* at 759–60. And the court held that the licensed practical nurse, although misdiagnosing the prisoner's condition, had "made a good faith effort to diagnose and treat" it. *Id.* at 760–61.

Lee believed her actions were inappropriate. *See id.* at 759–60 (holding that a registered nurse and a nurse practitioner were entitled to summary judgment because the registered nurse "fulfilled her gatekeeper duty by reporting [the plaintiff's] symptoms to . . . a nurse practitioner, who . . . then performed an independent assessment" and the nurse practitioner "fulfilled her gatekeeper duty by faxing [the plaintiff's] EKG printout to a physician"). Accordingly, the Court recommends that Lee's motion to dismiss be granted.

The Court's analysis concerning Werre is similar. Her only alleged involvement with Plaintiff's treatment for cardiac risk was that on August 17, 2018, Plaintiff presented to her with a serum creatinine level of 2.76 and recommendations from Columbia Nephrology to monitor Plaintiff's levels. [*Id.* ¶ 22.] Plaintiff does not allege that she failed to pass the lab results on to the appropriate person or that she failed to take any other specific action. In the absence of such allegations, it could not be reasonably inferred that Werre subjectively recognized that her actions were inappropriate. *See Mata*, 427 F.3d at 760. Accordingly, the Court recommends that Werre be dismissed from the case also.

**Dr. Ingraham and Dr. Meyer**

Dr. Meyer and Dr. Ingraham also argue that Plaintiff fails to state a plausible claim of medical deliberate indifference against them.[6] [Doc. 16 at 6–9.]

---

[6]Defendant Meyer also argues he should be dismissed because he was never served with the Amended Complaint. [Doc. 16 at 1.] On April 19, 2022, Plaintiff filed a motion for extension regarding the time to serve Defendant Meyer. [Doc. 24; *see* Doc. 25.] Contemporaneously with the issuance of this Report and Recommendation, the undersigned has issued a text Order granting Plaintiff's motion for extension. Accordingly, the Court recommends that the motion to dismiss Dr. Meyer be denied to the extent that the motion is based on lack of service.

13

The totality of Plaintiff's allegations against these Defendants includes that they were responsible for providing medical care and treatment to Plaintiff and charged with providing a reasonably safe facility and adequate medical care and otherwise protecting him from harm and remediating harm occurring to him while in custody [Doc. 12 ¶ 2, 3, 13]; they worked in the BRCI medical unit and regularly monitored Plaintiff's condition while he was incarcerated there [*id.* ¶ 14]; Plaintiff presented to Dr. Meyer on or about July 24, 2018, because he was experiencing chest pain [*id.* ¶¶ 15–16]; Plaintiff was evaluated and it was determined that he presented multiple risk factors for cardiac distress [*id.* ¶ 17]; Dr. Meyer saw Plaintiff again the next day and evaluated him for chest pain of the left side and tightening [*id.* ¶ 18]; "[Dr.] Meyer consulted with [Dr.] Ingraham and it was determined that Plaintiff would need further work up and evaluation to properly care for his condition" [*id.* ¶ 19]; a cardiology consultation was requested [Doc. 12-1 ¶ 10]; however, Plaintiff was never sent for any additional follow up [Doc. 12 ¶ 21]; Plaintiff presented to Nurse Werre in medical with a serum creatinine level of 2.76 and recommendations from Columbia Nephrology to monitor Plaintiff's levels [*id.* ¶ 22]; Lee forwarded Plaintiff's lab work to Dr. Meyer on December 19, 2018 [*id.* ¶ 23]; the level should have indicated to Dr. Meyer that Plaintiff's condition was worsening [*id.* ¶ 24] Dr. Meyer and Dr. Ingraham realized a substantial risk of serious harm to Plaintiff and disregarded the several signs [*id.* ¶ 25].

The Court concludes that Plaintiff's allegations are sufficient to state a claim against Dr. Meyer. The Fourth Circuit has held that "[f]ailure to provide the level of care that a treating physician himself believes is necessary may constitute deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 179 (4th Cir. 2014) (internal quotation marks omitted).

In *Jackson*, a prisoner with a history of heart problems, including a heart attack, was transferred to a new prison and seen by a prison doctor who told him "that he would order additional tests and treatments, including an electrocardiogram, heart rate monitoring, and a special diet." *Id.* at 174. Several months later, the doctor still had not entered the necessary orders. *Id.* As a result of the lack of treatment, plaintiff suffered from chronic and extreme pain. *Id.*

The Fourth Circuit held that the plaintiff successfully pled a deliberate indifference claim against the doctor. *Id.* at 179. In so doing, the court noted that the plaintiff "ha[d] no quarrel with [the doctor's] medical judgment or recommendations," and merely wanted "exactly the testing and treatment that [the doctor had] prescribed." *Id.* The court explained that the plaintiff's claim of deliberate indifference was supported by the court's prior decision in *Miltier*:

> We [held in *Miltier*] that a '[f]ailure to provide the level of care that a treating physician himself believes is necessary' may constitute deliberate indifference. In *Miltier*, we considered allegations against prison doctors very similar to those at issue here: One doctor recommended that a patient, who ultimately died in prison of a heart attack, be transferred to a cardiac unit but failed to follow up on this recommendation; and another doctor approved the referral but also failed to follow up and confirm that the transfer had occurred. Those allegations, we concluded, clearly presented a triable claim of deliberate indifference.

*Id.* (citations omitted). The court reasoned that the same principle supported a conclusion that the plaintiff in the case before it stated a deliberate indifference claim:

> At the 12(b)(6) stage, it is fair to infer that when [the doctor] prescribed a set of tests and treatments for [the plaintiff's] unquestionably serious heart condition, he did so because he subjectively believed they were necessary, and therefore must

15

> have known that failing to provide them would pose an excessive risk to [the plaintiff's] health. That is all that *Farmer* requires, *see* 511 U.S. at 842, 114 S.Ct. 1970 (subjective prong may be met by showing that risk is sufficiently obvious that official 'must have known' of it), and under *Miltier*, it is enough to state a claim of deliberate indifference, 896 F.2d at 853. *See also Hudson v. McHugh*, 148 F.3d 859, 863–64 (7th Cir. 1998) (*Farmer* satisfied by allegation that prison officials knew of serious medical condition and need for treatment but nevertheless failed to provide treatment); *Miller v. Schoenen*, 75 F.3d 1305, 1310–11 (8th Cir. 1996) (same).

*Id.*[7]

Here, Plaintiff alleges that Dr. Meyer determined on July 24, 2018, that Plaintiff, having complained of severe chest pain, "presented multiple risk factors for cardiac distress." [Doc. 12 ¶ 17.] After Plaintiff returned to medical the following day and Dr. Meyer "evaluate[d] him for chest pain of the left side and tightness" [*id.* ¶ 18], he "determined that Plaintiff would need further work up and evaluation to properly care for his condition" [*Id.* ¶ 19]. Dr. Krasner's affidavit, which is incorporated by reference into the Amended Complaint, clarifies that Dr. Meyer requested a cardiology consultation. [Doc. 12-1 ¶ 10.] On December 19, 2018, Dr. Meyer received Plaintiff's lab results, which should have indicated that Plaintiff's condition was worsening. [Doc. 12 ¶¶ 23, 24.] Nearly five months after Dr. Meyer had evaluated Plaintiff for chest pain and determined that he presented multiple risk factors for cardiac distress and needed a cardiology consultation,

---

[7]The Fourth Circuit referenced the fact that *Miltier* was overruled in part by *Farmer* in that *Farmer* established that to satisfy the deliberate indifference standard, proof of recklessness is not enough; rather, the plaintiff must show that the official "had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Jackson*, 775 F.3d at 178; *see id.* at 179. The court nonetheless concluded that *Miltier*'s principle "that a doctor's failure to provide care that he himself deems necessary to treat an inmate's serious medical condition may constitute deliberate indifference . . . survive[d] *Farmer*." *Id.* at 179.

Plaintiff still had not received that consultation. On January 1, 2019, still not having received the consultation, he suffered a heart attack. [*Id.* ¶ 26.]

Based on the analysis of *Jackson* and *Miltier*, the Court concludes that Plaintiff has done enough to state a deliberate indifference claim against Dr. Meyer. Similar to the allegations of the plaintiff in *Jackson*, Plaintiff's allegations give rise to a reasonable inference that Dr. Meyer knew that Plaintiff had not received the care that Dr. Meyer himself had determined Plaintiff needed, and yet Dr. Meyer failed to take further action to get Plaintiff that care. For this reason, the Court recommends that the motion to dismiss be denied as to Dr. Meyer.

In the Court's view, however, Plaintiff has not stated a claim against Dr. Ingraham. The only specific role Plaintiff alleges that Dr. Ingraham played in his treatment was that Dr. Meyer consulted with Dr. Ingraham on one occasion. [*Id.* ¶ 19.] The Amended Complaint alleges that "*it was determined* that Plaintiff would need further work up and evaluation to properly care for his condition." [*Id.* (emphasis added)] Although the allegation suggests that Dr. Meyer considered Dr. Ingraham's opinion in deciding that further work up was needed and in requesting a cardiology consult, there is no allegation that Ingraham was even informed of Dr. Meyer's decision. Further, even assuming that Dr. Ingraham knew that Dr. Meyer had requested a cardiology consult, Plaintiff does not allege that Dr. Ingraham had any further involvement in Plaintiff's treatment after the one-time consultation. Absent an allegation that Dr. Ingraham continued to be involved in Plaintiff's treatment for cardiac risk after consulting once with Dr. Meyer, the Court concludes that the facts alleged do not give rise to a reasonable inference that Dr. Ingraham was aware

that Plaintiff had not received the consultation that Dr. Meyer had requested. Thus, the facts also do not give rise to a reasonable inference that Dr. Ingraham subjectively recognized that his or anyone else's actions were inappropriate in light of the risk of harm to Plaintiff. *Parrish ex rel. Lee*, 372 F.3d at 303. Accordingly, the Court recommends that Dr. Ingraham be dismissed from the action.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Lee's motion to dismiss [Doc. 15] be GRANTED and that the remaining Defendants' motion to dismiss [Doc. 16] be GRANTED IN PART AND DENIED IN PART. The Court recommends that it be DENIED as to Dr. Meyer but GRANTED as to all other Defendants.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

April 25, 2022
Greenville, South Carolina